Our case for argument this morning is Hoopes Vineyard v. County of Napa. You have 20 minutes per side. Counsel, you can come up when you're ready. And please let me know whether you'd like to reserve time for rebuttal. Good morning, Your Honors. May it please the court. Joe Infante on behalf of the appellant. I'd like to reserve three minutes for rebuttal, please. Okay. Your Honors, this case is not about stopping a state proceeding. This case is about preserving access to a federal forum. The district court extended Younger beyond its reaches and basically has excluded these plaintiffs and these appellants from having a federal forum. Given this court's focus order, I thought I would start with standing and finality unless the court would like me to start with the abstention issues. It looks like you're interested. I think it'd be helpful for you to start with our focus order. I thought so too. Thank you. Your Honor, first, this is not a land use case. This is a constitutional case. And we've, throughout the constitutional case, is really the First Amendment. This is a First Amendment case regarding what conduct can occur at licensed wineries. And it's important to remember that all of these appellants are already licensed by Napa County to operate wineries. Smith-Madrone, for instance, has been operating since 1971, 73, I believe. All of them, Hoops and Summit Lake, since the early 80s, they've been operating. They're licensed by the state of California to operate wineries. They are already subject to the Napa County ordinances. So this is not a case where they were denied a license or denied a permit to operate. They've been operating for 40 and 50 years under these regulations, under these changing regulations. So under, you know, the courts below on these issues of standing and finality, I think it's important to remember that also Napa County brought a facial challenge here, not a factual challenge. It brought a facial challenge. So all of the well-pled allegations in our Second Amendment complaint must be assumed to be true and interpreted in our favor here. So looking first at standing, because all of these wineries are already regulated, are already subject to these ordinances, Lujan tells us that injury, in fact, is ordinarily not in question for these claims. I'll start with the First Amendment claims. I think that's the first question. I mean, isn't the, don't our cases point in different directions with respect to finality for, it's a little more liberal with respect to First Amendment, but the due process equal protection, we generally don't allow a party to use the constitutional framing to get around the finality rule. Certainly true. I was speaking to the First Amendment claims. Okay. On First Amendment claims, typically it's a more liberal pleading there, especially on facial challenges. It's under the SBA list test, we meet the criteria there. The first is, is there an intention to violate the restrictions? I guess this may be a question that will come up throughout this morning. Who's the we? Because it seems like the plaintiffs are differently situated. Certainly. Yes, they are certainly differently situated. Each are in, they're separate entities, different companies. They don't share finances. They don't share operations. They're in different parts of Napa County. Hoops, for example, is on the valley floor, right off Highway 29. It's actually regulated under the agricultural preserve section of the ordinances. You have Summit Lake and Smith Madrone that are up in the hills, actually on either side of Highway 29. They're actually regulated by the agricultural watershed section, but that weaves into the issue because they're not the same, right? That gets us into Doran, where Doran says, are they different companies? Do they have different finances? They don't share operations. Even below, not below, sorry, in the state court case, Napa County argued these wineries are not in privity. Well, I guess, I mean, set aside some of those details. How is Smith Madrone similarly situated to the, I mean, as I understand, they're just subject to, as you said, they've had licenses, but they're under at least a slightly different regime. So how does that affect the First Amendment claims based on Napa's actions or interactions? Yeah. Smith Madrone has a use permit, whereas Summit Lake and Hoops have a use permit exemption, essentially what's called there. So Smith Madrone is a little bit different. But the First Amendment claims, the acts are the same. We allege in our First Amendment claim that you wanted us to focus on Smith Madrone and Summit Lake. For those two, they have done these things in the past. And by these things, I mean private tastings, events, had customers come to their wineries to consume wine. Specifically for Smith Madrone, we allege in the complaint that Smith Madrone has held events in the past. It has held and invited customers for private tastings. Where in the complaint would we find the best allegation for purposes of Smith Madrone's threat of prosecution, given that they're differently situated? Certainly. Well, for the threat of prosecution, what you have, I think really the best allegation for that is to say what Napa's position is. And that's in paragraph 351 of our complaint. It's also exhibit 41 to a complaint. And this is a statement made by Napa County at trial in the state court case. And this is what they say. This is a quote. What the county has interpreted and applied is you can't have hospitality. You can't have people coming onto the grounds, tasting wine, buying merchandise, holding events, DJs, other kinds of public events. And that applies to holders of the permit that Smith Madrone has, as well as to the other wineries? As well as to the others. Yes. Now, Smith Madrone has a little bit more permissions than Summit Lake does, according to Napa County. Because what Napa County says for Summit Lake is you get zero customers. No one can come to your winery to consume wine. If anyone comes to your winery to consume wine, it's going to be a violation of the ordinances. Now, for Smith Madrone, it's a little bit different. Now, historically, our allegation is Smith Madrone didn't have a limit on the number of customers that could come to its winery to consume wine on a private basis. Because that's actually what its use permit says. It says, you know, by appointment, it won't be open to the public. And that's what they complied with. But sometime, and we don't really know how or why it happened, 2012, 2015, somewhere in that timeframe, it changed for Smith Madrone. And now Napa County's position is you can have 10 customers. Well, they didn't call it customers. They say visitors. And that's one of our issues here is we don't really know what a visitor means. I don't think Napa knows what a visitor means. But they say you can have 10 visitors per week and 520 visitors per year. Council, what I still haven't heard, though, you started with the framing of the First Amendment. And our focus order also pointed to Dry House. There, the SBA did already indicate that there was some disciplinary enforcement activity. So what specifically, what communications or what specific actions have been taken vis-a-vis Smith Madrone? Or is it just simply the position that you say has been clearly conveyed? I think for Smith Madrone, Summit Lake certainly has had enforcement against it. Napa County has told it, Summit Lake, do not do these things or you're going to get a violation. For Smith Madrone, under Dry House, it doesn't have to be an action against Smith Madrone. It can be against others. So we certainly have the, they're aware of the enforcement against Summit Lake. They're certainly aware of the enforcement against hoops. I mean, there is a ordinance enforcement action against hoops. There is a $4 million judgment against hoops. There is a permanent injunction against hoops. That certainly is enforcement. In our complaint, we also allege that there has been enforcement against others, right? We allege in paragraph 252 of the complaint that Napa County has enforced these changing interpretations, these restrictions on speech to other wineries and under Dry House, that's enough. It doesn't have to be, you know, the law doesn't require you to break the law. You don't have to break the law before you get into court. That's not what we require of parties. It's so long as you are aware of enforcement against others, that is enough. That is enough to state a claim. Can you move to talking about Summit Lake and Smith Madrone's due process equal protection and permit taking claims and to the question of whether those claims are actually ripe for our review? Certainly. When we're looking at ripeness, again, it's important to know that Napa County only challenged those as applied claims. They didn't challenge any of our facial claims. So when you look at counts 5, 6, 9, 10, and 11, they're a mix of facial and as applied claims. Napa County only moves on the as applied claims. They don't move on the facial claims. And again, that's actually this court's Laval decision where when you're looking at a facial claim, you don't have to comply with the finality and the ripeness. I know the court asked us to look at, you know, the focus decision talked about Williamson County. Now, Williamson County was partially overruled by Nick. The second part of Williamson County doesn't apply anymore. You don't have to go file a state or court action and be rejected or that. And then you have Pactel, which clarified further Williamson County because all Pactel requires is de facto finality. Has the county in this situation, do they have a position on this? I get. Do they? It seems like the rest of your arguments are that they don't, that it changes from week to week. And so aren't those a little bit intention? That is that is a there's a push pull on that on this on this argument here on the Vegas, certainly, because you're right. Napa County, they don't know what these terms mean. I mean, they have clearly admitted in the state court case they've admitted in public that they don't know what these terms mean. And these terms have changed, you know, from time to time. But I think their position is we don't care that they're vague. We don't care that these things change from time to time. I mean, there is a there's a memo. It's actually in our we cite to it in page three, paragraph 313 to 323 in our complaint. There's a memo from Napa County from 2015. And what that memo says, I think it's to the Board of Supervisors. It says our winery ordinances are vague. Our winery ordinances are unworkable. Enforcement doesn't know what to do with these ordinances. It doesn't know what to do with these terms. Has Smith-Madrone applied for a permit under these ordinances? Smith-Madrone has a use permit already. There is no permit. It already has a use permit. Right. But if the concern is kind of what the regime under current ordinances are and how the county will enforce it, why doesn't it have, as I understand, the others have been in discussions, but why doesn't Smith-Madrone have to push that a little further to show that it's right? Sure. The others are in discussion because they have the small winery exemption and Napa County had a compliance program, a voluntary compliance program. If you were an exemption, you could come in and ask Napa County to determine what your rights were. Now, the allegation from Smith-Madrone is not an exemption. It has a use permit. So I don't think it really fits into that program. But the allegation we make in our complaint is Smith-Madrone didn't do that. It didn't voluntarily seek compliance or seek something from Napa County, because what it's seen is that the wineries that did that, it took years. There are actually currently wineries, I believe today, who are still in that compliance program, and we're going on seven or eight years. And what happens is when you come out of that compliance program, you have less rights. You have less. That example is really Summit Lake. Summit Lake went and tried to do that compliance program and tried to say, what are our rights? And in order to increase a little bit of production, a couple visitors, a handful of visitors, what Napa County said was, you need to widen and pave the road that leads not only to your winery, but four or five other wineries. And it's going to cost you more than a million dollars to do so. And they simply didn't have the money to do it. They couldn't finish the compliance program. And that's the exaction claim for Summit Lake is the county said, pave this road that's going to service all these homes and other wineries. It's going to cost you a million dollars. And for the benefit of that, you're going to get four or five visitors per day. The math doesn't work, right? You don't have the, that's the Nolan and Dolan, you don't have the proportionality there. So they had to come out of that program. But Smith-Madrone, because they've seen this, they didn't do it. But I don't think they needed to do it because they saw the effect. They saw what they would be required to do. They saw the exactions. They saw the 75% rule, which is the Dormant Commerce Clause problem. And we also have. I guess this goes a little bit to some of the concerns that underlie ripeness. What does a district court order look like that would provide Smith-Madrone relief under those claims? The ultimate order? I think the ultimate order from the district court is just for Smith-Madrone to say, Napa County is precluded from limiting the number of visitors you can have per day, because your permit doesn't have that restriction. Napa County is prohibited from making you engage in a prior restraint so that you could have events, because they had events before. But now we've got to engage in a prior restraint and go seek approval from Napa County. Napa County, in the state court case, Napa County took the position that small wineries and small winery exemptions couldn't use any grapes that were not grown on their property or not grown in Napa County. So for Smith-Madrone, the answer is you don't have to abide by that. I think there's you know, the injunctive relief for Smith-Madrone here is pretty clear. It's very similar to the injunctive relief for Summit Lake, even though, yes, it does have a use permit. And Summit Lake has a small winery exemption and Hoops has a small winery exemption. I don't want to forget about Hoops. I think for Hoops and Summit Lake, I think the, you know, the injunctive relief in the end is the same for them. It's you're an exemption and these are your rights as an exemption. But then overarching all of that, I don't, you know, we're looking at our Eco-Protection claim. The Eco-Protection claim, you know, Napa County wineries are a single use in Napa County. There's just a use of winery. But under California law, you know, all uses must be treated the same, treated equally. But when you look at the 2019 winery database attached to our complaint and the various different years of databases are attached there as well, Napa County doesn't treat any winery the same. They're all different. You know, if you go to a winery in Napa County, if you go through that list, and we took out some of the examples, I think one of my favorite examples was there's a winery that has more visitors than like 300 other wineries combined, something like that. But none of that is based on objective criteria. Now, I know on Eco-Protection, I'm stuck with rational basis, and it's a really hard standard of review. But there is no rational basis for that because they don't do it on square footage. They don't do it on number of bathrooms, number of parking spaces. That's nowhere in their ordinance. It's just random. It's made up. And they actually, you know, they know that. They know that they don't treat hotels and restaurants in the county. They don't restrict the number of visitors they have by how many people or, you know, by visitors. They do it by building size. Same with, they understand that they're actually the only county in California. This is in our complaint, that the only county in California that limits the number of customers a business can have, a winery can have. Your Honor, unless you have questions, I'll reserve the... Do either of you have questions on abstention? I was going to jump to the retaliation claims at some point, but... Go ahead. I'll make sure that you have three minutes for... Well, let's jump to the retaliation claims. Can you walk us through whether you have anything more, and I'm not saying that it's not enough, but the temporal proximity, the one month after the denial of interventions, is that it essentially, or is there more? I think that's it, but I think that's enough, right? That's what the courts tell us. The temporal proximity, you know, it's within one month. You know, the cases tell us that, you know, there are cases that say within eight months is enough to put that question to a jury. Here we have within one month of seeking to intervene, Napa County sent these, you know, sting emails to these two wineries trying to entrap them. Now, I think the mistake that the district court made is it said, well, it's just enforcing its ordinances, and they already told you you couldn't do these things, but that therein lies the problem, right? It already told Summit Lake. The Napa has told Summit Lake, you can't have private tastings. Within one month of seeking to intervene, Napa County sends an email to Summit Lake trying to schedule a private tasting. No, but it would be more helpful, and perhaps this is hard to do without discovery, to have alleged, and they sent it to no one else. If they sent it to all the wineries, then is that any evidence at all? That's a fantastic question, and that's something actually I've been thinking about, and I actually have it in my notes, right? But that's a discovery question. If we get into discovery, and Napa County produces information that shows, look, we sent this exact same email to 300 other wineries within that time period, that's pretty good evidence for Napa County that this was not done in retaliation, and it was business as usual. But if discovery shows that, no, these were the only two wineries that got this, that's pretty good evidence for us that that was retaliation. But that's a discovery question, that's why that case needs, that claim needs to get to discovery. And Hoops, I think the Hoops retaliation is very similar, because for Hoops, Napa County took enforcement action against the personal residence of one of the owners of Hoops contemporaneous with the counterclaim or the cross-complaint in that case, which was completely separate and unrelated to that state court case. Okay, thank you. You'll have three minutes for rebuttal. Thank you. Good morning, your honors. Ryan McGinley Stemple on behalf of Napa County. I want to start by acknowledging and thanking the court for its focus order. My original plan with the court's indulgence was to briefly address abstention before spending the bulk of my time addressing the three justiciability issues identified by the court, and then, time permitting, addressing any questions regarding retaliation. But in light of the prior, my colleagues' arguments, I'm happy to jump straight into justiciability if the court has no further questions on abstention. Well, I guess if I could add an overlay to that, it seems like the district court didn't reach justiciability. And because if the justiciability doesn't affect all the parties, we have jurisdiction, the district court has jurisdiction to consider it. Why wouldn't we remand for the district court to sort out? So there are a few cases where the Supreme Court and we have suggested um sort out the abstention where there's abstention, but let the district court reach justiciability in the first instance. Well, for a couple reasons, I don't think that's necessary, your honor. I think first, you know, the gravitational pull of this case as, you know, the abstention arguments key in on is with respect to the county's action between hoops and the county. And so, you know, if, you know, younger abstention applies to hoops, the other two wineries can't piggyback off of hoops's standing to create an article three case or controversy. I also would say that, you know, I don't think that hoops would have standing for under the Dormant Commerce Clause for the same reasons as Summit Lake and Smith-Madrone. You know, they're just not subject to the 75 percent grape threshold unless they expand their winery development area, for instance. But that just leaves Summit Lake and Smith-Madrone, and I think that, you know, I'm happy to walk the court through the various, you know, claims and questions as to why. I just don't think that that is necessary. I just think that they haven't adequately alleged, you know, concrete specific facts to take this out of kind of an advisory opinion universe. You know, with respect to the first question regarding the expressive activity and pre-enforcement First Amendment claims one through four, they haven't alleged a course of conduct that is arguably affected with a constitutional interest that is arguably prescribed by the statutes in question within the meaning of Susan B. Anthony. Summit Lake alleges at paragraph 126 that it has limited the amount of on-premises sales due to fear of county enforcement, but that's not prescribed. Small wineries with a use permit exemption are allowed to sell wine on-premises bottles, that is. They just aren't allowed to have tastings under 18.08.600. I don't see any specific allegations actually from Summit Lake itself saying it wants to host tastings. There's sort of generic allegations as to all plaintiffs as a mass that they wish to invite guests to their business to allow customers to taste their products and intend on holding cultural business and social events. But the problem with that is as to Smith Madrone, it's allowed to do tastings by appointment under the terms of its use permit. So again, not something that's arguably prescribed. And as to both, tasting, the conduct of tasting is not arguably, it's not expressive. It's not, it's a conduct that doesn't implicate the First Amendment as I think, you know, the district court recognized sort of glancingly in rejecting kind of the facial sort of facial challenge exception to Younger. It's, I believe it's footnote 4 of 1 ER 15, citing the B&L Productions case, which in turn walks through the HomeAway case in terms of this types of business activity is not expressive and doesn't implicate the First Amendment. Relatedly, you know, in terms of the rubric of business, social and cultural events, you know, business events, similarly, the types of, you know, events at a winery don't implicate expressive activity either. So, which does leave, you know, social and cultural events, which, you know, in certain contexts may have an expressive component to them. But again, the problem there is they've hitched their wagon to the marketing of wine definition in terms of taking issue with their perceived inability to have events on. And that definition, that's 18.08.370, it talks about a marketing plan that's approved in conjunction with granting a use permit. So, that was rolled out with the winery definition ordinance in 1990, and it's about approving a certain number of events a year that are, you know, that are not social or cultural events that are, you know, winery-related events, business-focused. And in order to do, to tap into, you know, they haven't even applied for those use permits, you know, as Council acknowledged, Hoops and Summit Lake are subject to the small winery use permit exemption, and Smith-Madrone has a historical use permit from before the WDO. That is the winery definition ordinance, excuse me. And that the other issue is if you, if you're trying to, you know, the County has a process under Chapter 5, 5.36.010 of the County Code for temporary events of the sort of social-cultural variety, and that's a ministerial process. It's not sort of subject to the kind of discretion that creates a problem under the First Amendment. And so, they haven't alleged a course of activity in the future that they intend to engage in that is, you know, either implicates a constitutional interest because of the expressive component to it, or that is arguably prescribed. And then, in terms of the, you know, threat of future enforcement, I would agree that, you know, Smith-Madrone is not similarly situated in terms of, you know, being worried about enforcement impacts vis-a-vis Hoops. It doesn't have the same exact entitlement. The, unlike, there hasn't been past enforcement against either Summit Lake or Smith-Madrone. There has been, to be sure, some give and take between Summit Lake and the County over the scope of its entitlements and, you know, were it to increase visitation. But, you know, I don't read Exhibit 18 to the complaint, the Second Amendment complaint, to be, you know, anything enforcement-related. The authority, I think notably also in distinction with the Susan B. Anthony case, the authority to file a complaint is limited to County officials. You know, that was part of the problem in that case with the threat of enforcement was that any person, it was a sort of a citizen standing type provision where, you know, in a post-Dobbs world, we see that happening in the context of reproductive rights. That's not what we're dealing with here. And so, you don't have that same threat of future enforcement. And, you know, I think Council mentioned the winery database, you know, the visitation numbers. Has the County disavowed enforcement of, in the way that the wineries fear? So, the County does not, disavows enforcement as to on-premises sales of wine at both wineries. And I think that takes a lot of the air out of Summit Lakes sales. And it has no intention of bringing enforcement proceedings against Smith Madrone for conducting tastings by appointment, which its permit permits. They do focus on the winery database and the sort of, which is, again, an information, you know, it's a tool that's meant to be, you know, helpful to the public. It is not something that determines the scope of land use entitlements or, for that matter, anything that drives County enforcement activities. So, yeah, the County would not be enforcing, is prepared to disavow enforcing the sort of specific numeric visitation numbers in as to Smith Madrone in the private tastings context. So, you know, I just think that for all of these reasons, their First Amendment claims, while admittedly the standard is different, as Your Honor noted, between, you know, for standing under the First Amendment for pre-enforcement and for, you know, equal protection, due process, the other claims, I still don't think that they have alleged a concrete enough of an intended future course of conduct that implicates that constitutional interest and is arguably. But those points wouldn't apply, at least in the same way, to the retaliation claims. That is correct, Your Honor. I think that the retaliation claims, we're not looking at it through the standing lens. We're looking at it through a plausibility lens. And the challenge there, and I'll jump there before coming back to the other two sets of justiciability issues, is those, the retaliation claims for Summit Lake and Smith Madrone, as far as I read them, boil down to three allegedly adverse actions after they sought to intervene in the state court action. So as to Smith Madrone, it's actually just one action. It's the email that was sent to the wife of a general partner in Smith Madrone, Julianne Kodmer, who also represents other wineries, received a cryptic email from an address not affiliated with the county asking about hosting an event at, quote, your venue. I don't see how that is sufficient to show a retaliatory animus on behalf of the county when it's, you know, it does, to be sure, she did say, are you by chance with the county? And the anonymous account said, yes, I am. But I mean, I don't think that that is enough to show either retaliatory animus on the county's behalf, or that it came from the county in the first instance from a plausible standpoint, or that a person... I mean, why isn't that plausible that it came from the county? I don't understand that. Well, I don't think it's plausible that the county had a retaliatory animus as to Smith Madrone in the context of the face of that email. Because again, this goes to her personal email, doesn't go to a smithmadrone.com email. It comes from Warren Protector, some anonymous account. It says your venue. And then she says, oh, I represent a bunch of wineries. Which one are you identifying? Are you with the county by chance? And the response is yes. So there's no actual mention of Smith Madrone in the context of that email. And that alone, I just don't think, gets you to a point of either retaliatory animus, or perhaps even more, you know, fundamentally, that it would chill a person of ordinary firmness from engaging in the protected activity at issue. You know, Summit Lake, to their credit, as I understand them, alleges sort of two adverse actions. One being a similar email. But that email, that's in paragraph 781. They don't even mention the meets and bounds of that email. They just say Summit Lake received similar emails. So to me, it's, I just think that the complaint is utterly lacking in the specificity required to give rise to a plausible inference that there was a, and even if we take kind of the exact same email and mirror image it in the context of Summit Lake without a reference to Summit Lake, with just a reference vaguely to your venue, and it deals with somebody who represents multiple wineries, that's not enough to show retaliatory animus or chill a person of ordinary firmness. So that leaves the road and street standards issue. And admittedly, interestingly enough, after they intervene, you know, historically in 2019, 2021, Summit Lake was on notice that this was, you know, something they were probably going to have to deal with if they were going to increase visitation at their winery. After they sought to intervene, there was a communication about maybe you might be subject to some exemption based on, you know, whether or not your parcel map, you know, has certain details in it. And I would ask the court to just take a look at Exhibit 18 to the complaint. That's what they say is sort of the ultimate retaliatory blow. It's a letter from Jason Dooley from the county, and it says, you know, look, we looked at this, and the parcel map doesn't have the sort of required language at issue in order to exempt you from the roads and street standards. We studied this in light of this California Attorney General opinion, which kind of lays out the circumstances, the very limited circumstances under which a parcel map could be exempt from the roads and street standards, and yours did not apply. And interestingly, in their complaint, they do not allege, but our parcel map did comply with the exemption for the roads and street standards. So I don't think that even that, I think Smith-Madrone, the case for retaliation is, you know, extremely thin, but as to Summit Lake, even with the roads and street standards interface, there's just not enough to show retaliatory animus or, you know, something that would chill a person of ordinary firmness. I do want to step back and just briefly tie back into the second question in the focus order involving the Dormant Commerce Clause and the federal preemption claims. As to federal preemption, I have a hard time discerning exactly what this claim is even alleging. They certainly don't allege an injury, in fact, that's traceable to the county or redressable by this court or the district court, as I read it, and that's, you know, paragraphs 743 to 746 of the amended complaint, second amended complaint. As to the Dormant Commerce Clause, I think it is critical to focus that they're not subject to it as it only applies to pre-WDO wineries that expand beyond their winery development area. That's 18.104.250 of the county code. And winery development area is a term of art. It's defined contextually in 18.104.210 and it speaks to sort of the physical footprint of the winery, the paving, the structure. It's not just expanding your production, it's expanding your winery development area that subjects your additional production associated with that area to this 75 percent grape rule. And the purpose of that, which, you know, we don't need to get into today because that deals with the merits, but the purpose of that is to not be cannibalizing the agricultural land in the county without, you know, using the county grapes that you're, you know, making sure that you're actually, you know, employing them in making the wine. And the problem there is that they say they wish to expand their operations at paragraphs 6.16 and 6.25, but they don't say that they wish to expand their winery development operation, winery development area. They just say they wish to expand. I don't think that's enough. It's certainly not enough specificity as to what would bring them into applicability under the 75 percent rule. And so just like the private ambulance companies in Sierra Medical lack standing to bring a Dormant Commerce Clause claim on behalf of out-of-state public ambulance companies, they don't lack, they lack standing to bring a Dormant Commerce Clause claim in their own right, and certainly not on behalf of out-of-county wineries that might have similar grievances. As to the Takings Claim, the Due Process Claims, and the Equal Protection Claims, I think Your Honor, Judge Johnstone keyed in on it earlier, is that there's a final decision requirement there. They haven't sought one. I mean, Smith-Madrone has, you know, just alleges it operates under a use permit from 1973, and it's never sought to modify it. It is seeking to get a determination as to the scope of its entitlements. Summit Lake does allege that the county reached a final decision regarding its 2019 application, but it abandoned that application. It didn't actually bring that application to fruition, and it hasn't shown that it'd be futile to pursue it. You know, it could have finished it. It could have sought a variance under County Code Section 18.128. If that was unsuccessful, it could have appealed to the Board of Supervisors under Napa County Code 2.88. This is all a lot to, I think, maybe a page of your briefs discussed some of these questions about jurisdictions. So, why wouldn't it be more prudent to let the District Court revisit some of these kind of fact-specific questions about standing and timing and how the local ordinances work than for us to reach it in the first instance? Well, I don't, I think, you know, subject matter jurisdiction, I guess Sinakim might permit this Court to address just Younger, but, you know, it is a, you know, there's a sua sponte obligation with subject matter jurisdiction, and... Well, we have jurisdiction over the appeal, and so whether, I mean, some of our cases would suggest that the District Court can parse those out in the first instance. Again, I think while arguments in response to the focus order are helpful, the County didn't give us a whole lot to work with with respect to these jurisdictional arguments. Yes, I think, you know, we're keying in on the fact that, you know, Stockton v. Brown deals with, you know, sort of the roadmap of, you know, dealing with abstention, and then there may be some aspects of the case, particularly in a third-party abstention context, that hang around, and, you know, it does promote judicial efficiency to, you know, especially in circumstances like here, where there just isn't injury in fact that's traceable to County conduct that would be redressable by this Court. I don't think it, you know, promotes judicial economy to send it back down to the District Court when I do think that, you know, the allegations themselves just fall, you know, significantly short of where they need to be, even under the First Amendment standard, which, you know, I've discussed in some detail. And I would just note that, you know, Hone, this Court cited, talks about facts the case must be clear, complete, and unambiguous to meet the final decision requirement. That's at page 533. Now, admittedly, that's a case that found futility, but in that case, the Board of Supervisors had denied the landowner's application to subdivide a 60-acre parcel of land into four 15-acre parcels, and then by legislative act amended the general plan in a way that basically said, you know, rezoned that parcel and said you can't do what you want to do. So that's a very different type of, you know, futility than, you know, starting a process with the roads and street standards and then abandoning the application without taking it to the Planning Commission or the Board of Supervisors. I would just close by noting that for decades, the county's land use regulations have played a critical role in cultivating the development of Napa Valley wine industry while preserving the valley's agricultural character and the health, safety, and welfare of the county's residents. These regulations require that wineries go through a comprehensive process to obtain a permit to ensure that they have adequate infrastructure to accommodate increased visitation, such as by tours. Hoops didn't do that here, and when it became clear that the state court action wasn't going the way Hoops wanted it to go, it brought this case as a broadside against the ongoing nuisance enforcement action. That flies in the face of Younger, and the gravitational pull of the county's state court action against Hoops is undeniable and casts a broad shadow in this case. Whether viewed through the lens of Younger abstention, justiciability, or plausibility, Summit Lake and Smith-Madrone have not pled viable claims for relief in their own right. I would ask that the district court's orders be affirmed. Thank you. Thank you, Your Honors. Thank you, Your Honors. I'd like to hit just a few quick points. You know, on this idea of we didn't apply, Summit Lakes and Smith-Madrone and Hoops didn't apply for these permits, part of our case is we don't need to apply. We have these rights. That's part of our case. When you look at our state law preemption claim and our regulatory taking claim, our argument is under California ABC law, we are allowed to do tastings. We are allowed to do samples. We're allowed to have food. These are all rights given by the state of California. Under the Tompkins case, which is a California state case, it says that case holds the proposition that giving samples is obviously a form of advertising. There's the Fox case. I call it the Fox case. I think it's the State University of New York case. It's a U.S. Supreme Court case, interestingly, dealing with Tupperware parties. But the takeaway from that case is product demonstrations are commercial speech. Here, a wine tasting is a product demonstration. I'm sure all the judges have had a wine tasting before. You get a sip of wine and the question is, do you like this? Is it, you know, too buttery? Is it too, you know, too big for you, too bold? And you work through that tasting to get to the consumer to, what do you like? What are you going to buy? And they walk through that process. And the goal is for that consumer to walk off your premises having bought a case of wine. Now I heard counsel say, well, we'll disavow enforcement of retail sales. And he kind of walked a thread, a little needle there because the county position is you can go to these wineries and buy a case of wine or a bottle of wine to go. County says that's okay. But what you cannot do, especially at Hoops and Summit Lake, is you can't try before you buy. So you can't do that product demonstration. You can't have that commercial speech. It's very difficult to sell someone a case of $100 bottles of wine if they're not allowed to try it first. They're not allowed to taste it first. That gets into the commercial speech claim. That's our regulatory taking claim with the state ABC laws. That's our preemption claim. I do want to talk just about this idea that Summit Lake and Smith and Brown are piggybacking off Hoops. They're not piggybacking off Hoops. These are independent businesses that have their own constitutional rights. They have their own state rights, and they are defending those rights. And then circling to Hoops, that's the Doran case. That's why this case is Doran. It's not Hicks, and it's not Spargo. It's Doran. And we're talking about Hoops. I think for Hoops, the county, it's this broad brush of this all-encompassing state case. The second amending complaint is 801 paragraphs. It's 102 pages. It's 14 claims. The state claim, 69 paragraphs, 17 pages, 2 claims. It is about public tastings. The only issue in the state case is public tastings. And we will look at Knopsey and Amerisource-Burgin to U.S. Supreme Court in a Ninth Circuit case. Those cases tell us that parallel proceedings are okay. That's what Hoops is bringing. Hoops is bringing a parallel proceeding. It's choosing a federal forum for its federal case, federal claims, after a state forum said, no, I'm not going to let you bring those claims here. It has to have a forum somewhere for those claims. Okay. Let me stop you. I apologize. Either of my colleagues have any other questions? No? Okay. Thank you very much for your arguments. We thank both counsel for their helpful arguments in this case. This case is submitted, and we stand in recess for the day. Thank you.
judges: THOMAS, JOHNSTONE, Vera